# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | **DOCKET NO. 4:20-CR-00385** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **JAMES DAVID JIMERSON** | § | |

## DEFENDANT JAMES JIMERSON'S MOTION TO SUPPESS EVIDENCE

**TO THE HONORABLE CHIEF JUDGE LEE H. ROSENTHAL**

Now comes defendant **JAMES JIMERSON** and files this his motion to suppress

and would show the Court as follows:

### I.    FACTUAL BACKGROUND

On August 20, 2020, James Jimerson was stopped for improper lane change and

obstructed license plates by Houston Police Department Officers Donald

Matheny and J. Garza.[1] Anthony Jimerson was a passenger in the vehicle.

 Both officers Matheny and Garza were wearing body cameras which were

activated during their encounter with Mr. Jimerson. The government produced

---

[1]  DEA 6 related to James and Anthony Jimerson

the body cameras pursuant to written discovery request from counsel. The

factual background set forth in this motion is derived from both body cameras.

There are additional body cameras but these two cameras capture the basics.

The account of facts below is intended to provide a sufficient basis to grant an

evidentiary hearing in this matter.   Counsel is unable to present the actual video

evidence in the motion. The actual videos are the best evidence of the factual

allegations made in the motion to suppress.

The traffic stop was initiated as James Jimerson was turning into the parking

lot of a CVS store. Upon stopping the dodge ram truck an initial check of the

license plates on the vehicles is done insurance was verified before the truck is

approached.  Additionally, officer Garza uses his iPhone to search "Canton",

Texas on google and determines that Canton is near Dallas. Officer Matheny

instructs his partner to "make small talk with the passenger"..

As Officer Matheny approaches on the passenger side of the vehicle his first

question to the driver is "How many yall got back there referring to fishing

equipment in the back of the vehicle.  He then requests that window be rolled

down in order to view the back seat of the vehicle to make sure nobody is back

there. James Jimerson replies there is nobody back there. Matheny then

responds I believe you but I gotta look, then says all right cool. Have yall been

fishing? – Could you do me a favor and put your phone down and talk to me.

Jimerson remains polite and indicates that he is attempting to retrieve his insurance from his phone. Officer Matheny responds that he already has insurance information indicates that he already has that- James Jimerson's Texas Driver's License is handed to Matheny. Matheny then ask then he request the passenger ID.

After receipt of the passenger identification, Officer Matheny continues with line of questioning regarding fishing and ask where did yall go fishing at; Officer Mathney is then able to observe both ID's and ask " Are yall related", Are yall brothers, Are you allright? – We try to be a little friendly… we will get you out of here in a minute.

After James Jimerson's steps to the side, Officer Matheny ask "who does the vehicle belong to?.. and then directs James Jimerson to his conversation with his brother saying I asked him are yall related… and he just looked at him…. I was just trying to be friendly- brothers cousins something- are yall from canton? Jimerson explains that he is from Canton and his brother is from Desoto.

Jimerson advises that his brother has gout.  Officer Matheny then hands both drivers license to Officer Garza.  Officer Garza returns to the patrol vehicle and quickly runs both the driver's licenses and determines there are no active warrants for James Jimerson nor Anthony Jimerson.  Officer Garza continues

his search on the computer to run criminal histories and locates criminal

histories for both James Jimerson and Anthony Jimerson.

During the time period that Officer Garza is running the driver's license checks

Officer Matheny then begins discussing Jimerson's travel asking him were you

going to turn into this parking lot, and Jimerson explains that his brothers leg is

swollen and that his brother has gout, and he was turning into CVS.

Matheny proceeds to then ask James Jimerson does he see lines on the road and

does he know what they are for? Officer Matheny advises James Jimerson that

"you just can't drive across those lines," then he goes on to say that we were at

the light at spring cypress there was another car in-front of you just maintain

your distance.  He advises Jimerson that "I'm not here to write you no tickets I

don't want to cost you money". Then he directs Jimerson attention to the

licenses plate border on his vehicle and say another thing I can get you to do is

remove that if you get a chance- noting that the dealership  puts it on ther but no

parts of the letters can be covered up". He also advises that anything hanging

from your mirror unless it's a placard has got to come off.

Garza continues his computer search and then he takes pictures of the driver's licenses and sends them to Chris Cry. Garza continue his search of computer then exits his vehicle and ask a back-up officer "do you have your partner".

As Garza approaches Officer Matheny, Matheny ask Garza "no tickets no warrants nothing out like that? Garza responds to Matheny "Uhh its still running and everything". Jimerson then questions Garza's statement by saying "Still running?". Garza explains "its city equipment man like government equipment". Matheny joins in on the explanation that he has to reboot his computer 3 times on a 10-hour shift.

These explanations unreasonably extended the duration of the traffic stop. There was not a reboot of Garza's computer. Garza's body camera captured his computer search of the backgrounds of both defendants. At the time that Garza says "still running", in fact he knows that neither James Jimerson nor his brother Anthony Jimerson have active warrants. Below is a screen shot of Garza's computer search which reflects "No Warrants found for Plate". Additional video reflects what appears to also show that no active warrants for each James Jimerson and Anthony Jimerson. In fact, when Garza exits his video his statements to the K-9 Officer regarding whether his partner is present is based on the criminal history of the defendants not the existence of any warrant.



Despite the absence of warrants and the decision not to issue citations for the traffic violations. The traffic stop was not terminated.  Matheny ultimately ask James Jimerson for consent to search his vehicle which is denied.  Jimerson is told that a dog- sniff was going to be conducted. Matheny alleges that Jimerson was evasive with him and Jimerson disagrees. The K-9-unit dog is brought out to smell the exterior of the vehicle. What constitutes an "alert" is unclear. At one point it appears that a small ball is thrown under the vehicle and the dog

grabs the ball. Officer Matheny advises that the "dog has alerted" on the vehicle

and ultimately a search of the vehicle is conducted. Narcotics the subject of this

indictment are located and both Mr. Jimerson and his brother and arrested.

## THE FIFTH CIRCUIT HAS CONSISTENTLY SUPPRESSED EVIDENCE WHERE TRAFFIC STOPS EXCEED THE REASONABLE DURATION NECESSARY TO INVESTIGATE THE BASIS FOR THE STOP

Traffic stops are considered seizures within the meaning of the Fourth

Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003); *see Delaware v.*

*Prouse*, 440 U.S. 648, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The Fourth

Amendment protects individuals "against unreasonable searches and seizures." U.S.

Const. amend. IV. The legality of a traffic stop is analyzed under the framework

articulated in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968),

and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117, 119 S. Ct. 484, 142 L. Ed.

2d 492 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To

determine whether a seizure is reasonable, the court considers (1) "whether the

officer's action was justified at its inception," and (2) "whether the officer's

subsequent actions were reasonably related in scope to the circumstances that

justified the stop." *U.S. v. Brigham*, 382 F.3d 500, 506 (quoting *Terry*, 392 U.S. at

19-20).

When considering whether an officer's actions were justified at their inception, the Supreme Court has stated that the Fourth Amendment is satisfied if the officer's actions are supported by reasonable suspicion to believe that criminal activity "may be afoot." *U.S. v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002) (quoting *Terry*, 392 U.S. at 30). The Supreme Court has specifically instructed that, when reviewing courts make reasonable suspicion determinations, they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* (quoting *U.S. v. Cortez*, 449 U.S. 411, 417-418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981)). The totality of the circumstance's standard allows officers to draw on their own experience and specialized training to make inferences from, and deductions about, cumulative information available to them that might "well elude an untrained person." *Id.* (quoting *Cortez* at 418). An officer may not rely on a mere "hunch" in order to justify a stop. *Terry*, 392 U.S. at 27.

As part of a traffic stop, a police officer can request a driver's license, insurance papers, vehicle registration; run a computer check on the papers; and issue a citation. *United States v. Shabazz*, 993 F.2d 431, 437 (5th Cir. 1993). An officer may ask questions about the purpose and itinerary of the trip or about subjects completely unrelated to the stop so long as those questions do not extend the stop's duration. *United States v. Pack*, 612 F.3d 341, 350 (5th Cir. 2010).

However, when the purpose of the stop is resolved, "the detention must end unless there is additional reasonable suspicion supported by articulable facts." *United States v. Gonzalez*, 328 F.3d 755, 758 (5th Cir. 2003). As the Supreme Court stated, "[a] seizure justified only by a police-observed traffic violation . . . become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission of issuing a ticket for the violation." *Rodriguez v. United States*, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015) (internal quotation marks and citation omitted).

In addition to the above referenced authority, Jimerson relies upon United States v. Jenson, 462 F.3d 399 (5th Cir. 2006) to assert that any detainment past when the licenses returned clear, is unconstitutional. In Jenson, the Fifth Circuit held that an officer unlawfully prolonged a detention outside the scope of the traffic stop. Jenson, 462 F.3d at 406. A DPS trooper observed the defendant speeding. Id. at 402. The trooper ran the defendant's driver's license through a computer check, and the license came back clear. Id. After receiving a written warning, the trooper noted that the defendant became nervous and talkative. Id. The trooper asked for consent to search the vehicle, to which the defendant gave consent. Id. The trooper then located a "two-shooter" gun on the defendant, who was later arrested for being a felon in possession of a firearm. Id. On appeal, the Fifth Circuit held that the purpose of the stop had

ended once the license had been cleared and that any prolonged questioning after the license returned clear violated the Fourth Amendment. Id. at 404.

Similarly, in United States v. Macias, 658 F.3d 509 (5th Cir. 2011), wherein the Fifth Circuit concluded that a Texas DPS officer unconstitutionally prolonged the defendant's detention by asking irrelevant and unrelated questions without reasonable suspicion of criminal activity. In Macias, after being stopped for failure to wear a seatbelt, the defendant told the trooper that he did not have insurance for the vehicle, but that the vehicle belonged to his girlfriend, who had insurance. Macias, 658 F.3d at 512. The trooper questioned the defendant about his employment, criminal history, and destination for eleven minutes. Id. at 513-14. The trooper then ran checks on the vehicle and issued citations for failure to wear a seatbelt and no proof of insurance, but then continued questioning the defendant about whether he would consent to a search of the vehicle. Id. at 515.

After obtaining consent, the trooper searched the vehicle approximately thirty minutes after the traffic stop had been initiated. Id. The trooper eventually located an unloaded firearm and ammunition and arrested the defendant for being a felon in possession. Id.

The Fifth Circuit held that the continued detention went beyond the permissible scope of the stop. The court reasoned that the extensive questioning, unrelated to the questioning regarding the initial traffic stop, impermissibly extended the duration of

the stop and did not demonstrate that the trooper diligently pursued a means of investigation that was likely to confirm or dispel his suspicion quickly. Id. at 518-22. Once the licenses returned clear the traffic stop should terminate. See United States v. Santiago, 310 F.3d 336, 341-42 (5th Cir. 2002) ("Once a computer check is completed and the officer either issues a citation or determines that no citation should be issued, the detention should end, and the driver should be free to leave.").

## APPLICATION OF CASE LAW TO FACTS IN THIS CASE

Assuming without conceding the reasonableness of the traffic stop for the alleged traffic violations. The ultimate question on the legality of this seizure turns on the government's efforts to extend the duration of the traffic stop. These efforts include Matheny's instruction to Garza to "make small talk", Garza's statements that the warrant checks were still running which contradicts the body camera evidence showing the warrants check returning as clear, Garza's photographing text messaging of the drivers license and sending it to Chris Chrissy[2]. Matheny's statement that he is not writing any tickets for any of the alleged violations. The request for consent to search which is refused.  Notably on this issue, in Jensen and Macias consents to the vehicle searches were given but were not considered to override the officer's efforts to extend the duration of the traffic stops. It is only

---

[2] The text message exchange does not appear to be in the discovery produced by the government and is not referenced in the DEA 6 nor the HPD reports.

after the background check had come back clear, Jimerson has been told that he is

not going to be issued any citations, Jimerson denies consent to a search of his

vehicle that a but is also told that a dog was going to be run around the vehicle[3]. At

the point in time of the dog-sniff, the traffic stop had already been unreasonably

extended. There was not meaningful investigation of the traffic offenses alleged to

the purpose of the initial stop.  Instead, there was small talk to unlawfully extend

the duration of the traffic stop.  Additionally, viewing the dog's behavior there is

not clarity on what constituted an alert and what is not an alert.  Thus, the

defendant is requesting an evidentiary hearing on the motion to suppress. The

Supreme Court's statement that a " "[a] seizure justified only by a police-observed

traffic violation . . . become[s] unlawful if it is prolonged beyond the time

reasonably required to complete th[e] mission of issuing a ticket for the violation."

*Rodriguez v. United States*, 135 S. Ct. 1609, 1612, 191 L. Ed. 2d 492 (2015).

There is no meaningful doubt that the seizure of  James Jimerson, Anthony

Jimerson, and the truck and its contents was prolonged beyond the time reasonably

required to complete the mission of issuing a ticket.

**WHEREFORE,** the defendant prays that this Court conduct an evidentiary hearing

which would allow the defendant to be able to present the video  evidence and

exhibits to support the factual allegations in the motion and upon hearing the

---

[3] The statements regarding not issuing citations occur at two different points in the video

evidence enter an order suppressing all evidence contained in the Dodge Truck and

or seized as a result of the arrest.

Respectfully submitted,


The Law Office of Russell Wilson II
1910 Pacific Ave
Dallas, TX 75201
Tel: 469-573-0211
Fax: 972-704-2907
Russell@Russellwilsonlaw.com


By:/S/ Russell Wilson II
       Russell Wilson II
       State Bar No. 00794870
       Attorney for **JAMES JIMERSON**

## CERTIFICATE OF CONFERENCE

On May 16, 2022, I was <u>not able</u> to confer with conferred with AUSA Leo Leo regarding the specific contents of this motion but I understand generally the government contends that the search and seizure in this case did not violate the 4th amendment. I believe this government will oppose this motion.


/S/ Russell Wilson II
Russell Wilson II

## CERTIFICATE OF SERVICE

This is to certify that on May 16, 2022, a true and correct copy of the above and foregoing document was served on the Assistant United States Attorney Leo Leo via ecf

/S/ Russell Wilson II
Russell Wilson II